In the Matter of the Estate of MALIE, Also Known as MOLLIE SHEROWER, or SHEROVER, Deceased.

Surrogate's Court, Westchester County, May 25, 1939.

*David Borodkin,* for James F. Milde, petitioner, as receiver in supplementary proceedings, etc.

*Barshay, Frankel & Rothstein* [*Louis S. Amreich* of counsel], for Max Sherower and Augusta S. Spector, as administrators, etc.

*Frederick W. McGowan,* for the National Surety Corporation.

MILLARD, S. Upon the application of James F. Milde, the receiver in supplementary proceedings of the property of Robert Sherower, one of the distributees herein, an order was made on February 14, 1938, directing the administrators to file their account. The account filed pursuant to said order shows that the distributive share due Robert Sherower was paid over to his sister, Augusta S. Spector, as his assignee. The receiver objects to this payment, claiming that the assignment was fraudulent and that his right to the distributive share of Robert was prior to that of the assignee.

Decedent died on September 5, 1935, and letters of administration

were issued to Max Sherower and Augusta S. Spector, two of her children, on September 30, 1935. The evidence is that, on October 16, 1923, a judgment in the sum of $15,136.84 was recovered in the Supreme Court, New York county, by New York Merchandise Co., Inc., against Robert Sherower; that thereafter, on November 8, 1935, the usual order for his examination in supplementary proceedings was served upon the judgment debtor. A third-party order was served upon Max Sherower, one of the administrators herein, on December 2, 1938.

The examination in supplementary proceedings of Robert Sherower was had on November 15, 1935, at the conclusion of which James F. Milde, Esq., was appointed receiver. In this examination, a transcript of which was received in evidence upon the hearing in this matter, the judgment debtor testified in substance that he had not assigned any property during the past five years and that he was not entitled to anything from his mother's estate as she " left everything to my sister Mrs. Wald who has no husband." This testimony is particularly pertinent in view of the fact that Robert's intestate share in his mother's estate was paid over to his sister, Augusta S. Spector, under a written assignment executed and acknowledged before a notary public on October 4, 1935.

The controversy, therefore, resolves itself into a determination as to the validity of the purported assignment from Robert Sherower to Augusta S. Spector. The court has full power to determine this question as well as other questions, legal and equitable, arising between the parties to any proceeding before it. (Surr. Ct. Act, § 40; *Matter of Haber*, 151 Misc. 82, 84.)

The assignee testified that her brother Robert was indebted to her, and in support of her contention produced a receipt dated May 6, 1916, from which it appears that she, as agent for Robert, had deposited the sum of $833.33 with the district attorney's office in New York county to be held in trust pending the disposition of a matter in which her brother Robert was involved. She says that this money was not repaid and this transaction is said to form part of the consideration for the alleged assignment.

It conclusively appears that Robert Sherower was insolvent when the alleged assignment was executed. Upon the hearing in this matter, when asked " What is that paper? " (referring to the assignment) he answered: " O. K. to pay my money to my sister from mother's estate. I owed everybody money and she needed it more than the others." The transcript of this witness' testimony given in his examination in supplementary proceedings was received in evidence only upon the question of his credibility and not for

the purpose of attacking the title of the assignee. The assignment in question was given under circumstances which are certainly not free from suspicion. It is alleged to have been executed and delivered one month after decedent's death by a brother to his sister and supported by a consideration already outlawed by the Statute of Limitations. It was never recorded. All members of the family, including the assignee, obviously knew of Robert's insolvency. The only consideration expressed in the alleged assignment is " of monies advanced by the assignee hereinafter made," which might well refer to advances to be made in the future. The courts have taken cognizance of the fact that direct proof of fraud is often difficult. In *Greenwald* v. *Wales* (174 N. Y. 140) the court stated (at p. 145): " While fraud is not to be presumed, but must be proved, it is rarely susceptible of direct proof and may be inferred from facts and circumstances which warrant the conclusion." The court's opinion also included a quotation from *Parker* v. *Connor* (93 N. Y. 124), in which it is held: " There can be no doubt that it is legitimate for the jury in such cases to consider whether the vendee had knowledge of facts pointing to a fraudulent intent or calculated to awaken suspicion, and that actual notice of a fraudulent intent on the part of the vendor need not be established by direct proof. The fact of notice of knowledge may be inferred from circumstances." It thus appears that when fraud can be imputed to both parties to a transaction such as this, the court may vitiate the assignment regardless of the fact that it is supported by consideration.

In view of all the circumstances shown here, therefore, the court is of the opinion that the assignment from Robert Sherower to Augusta S. Spector was designed to defraud creditors and particularly the receiver. Objection by the receiver is, therefore, sustained and the assignment declared to be null and void. The administrators will be surcharged in the amount paid under said assignment.

Settle decree.